# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES T. CONWAY, III

:

    Petitioner,                                   Case No. 3:07-cv-345

                                        :            District Judge Timothy S. Black
   -vs-                                       Magistrate Judge Michael R. Merz

MARC C. HOUK, Warden,

:

    Respondent.

**SUPPLEMENTAL MEMORANDUM OPINION ON DECISION AND ORDER DENYING PETITIONER'S RENEWED MOTION FOR EVIDENTIARY HEARING**

       This case is before the Court on Petitioner's Limited Objections and Appeal (Doc. No. 108) from the Magistrate Judge's Decision and Order Denying Petitioner's Renewed Motion for Evidentiary Hearing (Doc. No. 105). The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

       Petitioner sought an evidentiary hearing on his First, Third, Fourth, and Twelfth Claims for Relief. The Magistrate Judge denied a hearing on Claims Three and Four without prejudice and that motion has been renewed (Doc. No. 107), but is not yet ripe. Only the First and Twelfth Claims for Relief are at issue in the current appeal.

**First Claim for Relief**

In his First Claim, Petitioner asserts his conviction is constitutionally infirm because the State violated *Massiah v. United States*, 377 U.S. 201 (1964), by placing jailhouse informant Ronald Trent with him in jail to elicit his admissions about the crime after he had requested counsel. On this claim Petitioner proposed to call as witnesses at the evidentiary hearing Mr. Trent and Franklin County Sheriff's Detective Zachary Scott. The Magistrate Judge denied an evidentiary hearing at which these two witnesses would testify because:

1. Having been granted permission to depose Detective Scott in these habeas proceedings, Petitioner did not do so. Therefore Petitioner has no idea what Detective Scott would testify to.

2. Petitioner did depose Ronald Trent in these proceedings, but was unable to point to any testimony in his deposition which would support the First Claim for Relief.

3. The First Claim for Relief is procedurally defaulted.

(Decision and Order, Doc. No. 105, PageID 3104-3108.)

In his Objections, Petitioner says nothing about the first two grounds of the Decision, focusing instead entirely on the procedural default ruling. The first two rulings would be sufficient in themselves to preclude an evidentiary hearing at which Trent or Scott was called to testify. Holding an evidentiary hearing in a habeas corpus case remains discretionary with the district court. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Conversely, one of the reasons for permitting discovery in habeas cases is to narrow or eliminate the need for an evidentiary hearing. Where discovery has produced nothing which would be useful if admitted in evidence, there is no reason

to hold a hearing.

On the procedural default question, Petitioner admits he did not raise this claim on direct appeal and when he attempted to raise it in post-conviction, the Ohio Court of Appeals found it was barred by Ohio's criminal *res judicata* doctrine, *State v. Conway*, 2006 Ohio 6219, 2006 Ohio App. LEXIS 6192 ¶ 29 (Ohio App. 10th Dist. Nov. 28, 2006). Recognizing that the applicable standard for procedural default in habeas is supplied by *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), Petitioner argued his procedural default could be excused by showing ineffective assistance of appellate counsel. He asserted before the Ohio Supreme Court in an application to reopen under Ohio S. Ct. Prac. R. XI, § 6 that omission of this claimed error was ineffective assistance of appellate counsel, but the Ohio Supreme Court ruled that it was not. The Magistrate Judge reasoned that this Ohio Supreme Court decision was not an objectively unreasonable application of United States Supreme Court law and was therefore entitled to deference under 28 U.S.C. § 2254(d). Because the procedural default could not be excused under *Maupin*, it precludes this Court from reaching the merits of the First Claim for Relief.

Petitioner objects that this ruling inappropriately "conflates the applicable standards" (Objections, Doc. No. 108, PageID 3129). He asserts further that

> [W]ithout the benefit of an evidentiary hearing, [he] could not have demonstrated that the state court decision was unreasonable. If Petitioner could have demonstrated without an evidentiary hearing that the Ohio Supreme Court was objectively unreasonable, he would not have requested an evidentiary hearing.

*Id.* The Magistrate Judge does not understand how an evidentiary hearing would enable Petitioner to make that demonstration. Petitioner's direct appeal counsel were limited to facts of record at the time of the appeal. Thus whether they provided ineffective assistance of appellate counsel by not

-3-

raising this particular claim depends on what facts they had available in the record to support the claim, not what facts might otherwise be gathered to support the claim. It cannot be ineffective assistance of appellate counsel to fail to argue a claim on the basis of unavailable facts. And the question of whether it was ineffective assistance of appellate counsel to fail to present this claim on the facts of record is a question of law – the Ohio Supreme Court only evaluated the claim in terms of what facts were already of record. Whether the Ohio Supreme Court was objectively unreasonable in applying clearly established United States Supreme Court precedent to that question of law is itself a question of law and not dependent on the introduction of additional evidence.

Petitioner relies on *Ayers v. Hudson*, 623 F.3d 301 (6th Cir. 2010), to support his position. That case does indeed speak to the substantive standards for evaluating a claim under *Massiah v. United States*, 377 U.S. 201 (1964). It found the Ohio Court of Appeals' application of *Massiah* to the facts in that case was an unreasonable application of *Massiah*. *Ayers*, 623 F.3d at 316. Nothing in *Ayers* speaks to the question before this Court, to wit, whether the Ohio Supreme Court's ruling on the ineffective assistance of appellate counsel claim was objectively unreasonable. In other words, because Petitioner cannot overcome his procedural default on direct appeal, this Court cannot reach the substantive question under *Massiah* and *Ayers*.

Therefore the denial of an evidentiary hearing on the First Claim for Relief is not in error.

## Twelfth Claim for Relief

Petitioner's Twelfth Claim for Relief is a free-standing actual innocence claim. In other words, Petitioner asserts that because "he did not inflict the fatal blows that caused the death of

Andrew Dotson," he cannot constitutionally be executed for that crime, even if the trial at which he was found guilty of that crime is otherwise free of constitutional error. On this claim, he proposed to elicit the testimony of Dr. Werner Spitz, an as-yet-unidentified forensic entomologist, and Shawn Nightingale, an eyewitness to the murder of Andre Dotson (Motion, Doc. No. 101, PageID 3068-3069).

The Magistrate Judge denied an evidentiary hearing on this Claim for Relief, accepting the Respondent's argument that the United States Supreme Court has not recognized a right to habeas relief based on actual innocence standing alone. In his Objections, Petitioner directly asserts that such a claim is cognizable.

Petitioner refers first to *Herrera v. Collins*, 506 U.S. 390 (1993). He admits that the Supreme Court decided this case "on the underlying facts as opposed to the legal issue, ..." but cites dicta by Justices O'Connor and Kennedy and the dissents to show that "a majority of the *Herrera* court believed that the execution of the innocent violated the Constitution" (Objections, Doc. No. 11, PageID 3132). To the contrary, Justice O'Connor expressly said in her *Herrera* concurrence that the Supreme Court had, in that case, "appropriately reserve[d] the question whether federal courts may entertain convincing claims of actual innocence." 506 U.S. at 419. Similarly in *House v. Bell*, after quoting Justice O'Connor's *Herrera* concurrence, Justice Kennedy wrote for the majority:

> House urges the Court to answer the question left open in *Herrera* and hold not only that freestanding innocence claims are possible, but also that he has established one. We decline to resolve this issue. We conclude here, much as in *Herrera*, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it. To be sure, House has cast considerable doubt on his guilt--doubt sufficient to satisfy *Schlup's* gateway standard for obtaining federal review despite a state procedural default. In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as "extraordinarily

> high." 506 U.S., at 417, 113 S. Ct. 853, 122 L. Ed. 2d 203. The sequence of the Court's decisions in *Herrera* and *Schlup*--first leaving unresolved the status of freestanding claims and then establishing the gateway standard--implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*. It follows, given the closeness of the *Schlup* question here, that House's showing falls short of the threshold implied in *Herrera*.

*House v. Bell*, 547 U.S. 518, 555 (2006). Whatever the dicta in *Herrera* and *House*, the Supreme Court has made it clear in those very cases that it has not yet decided whether a free-standing actual innocence claim is cognizable in habeas corpus.

While the Supreme Court has not found such a claim cognizable, Petitioner argues other federal courts have "recognized the cognizability of actual innocence claims." (Objections, Doc. No. 108, PageID 3137.)

- In *Boyde v. Brown*, 404 F.3d 1159 (9th Cir. 2005), the court implicitly recognized that there could be such a claim, but found that Boyde's presentation of new psychological evaluations did not rise even to the level of a colorable showing of actual innocence. With no express discussion of *Herrera*[1], *Boyde* is at most a repetition of *Herrera's* hypothetical recognition of such a claim.

- In *Noel v. Norris*, 322 F.3d 500 (8th Cir. 2003), the court recognized that Herrera left open the possibility of an actual innocence claim, but held petitioner could not take advantage of that possibility.

- In *Conley v. United States,* 323 F.3d 7 (1st Cir. 2003), the court held "powerful new evidence of innocence can satisfy one of the new "gatekeeper" requirements for bringing a "second

---

[1] *Boyde* preceded *House v. Bell*.

-6-

or successive" section 2255 motion, see 28 U.S.C. § 2255; but a traditional habeas ground is required once one gets through the gate." and "[i]t is not clear whether a habeas claim could be based on new evidence proving actual innocence, see *Herrera*, 506 U.S. at 417..." *Id.* at 14, n. 6.

None of these cases holds that a freestanding actual innocence claim is cognizable in habeas. While *Herrera* and *House*, along with the cited cases, keep that possibility open, it would be inappropriate for this Court to recognize such a claim in the first instance. So many habeas corpus petitioners claim actual innocence and the burden of hearing those claims in the first instance would be so great that such an innovation should await approval by an appellate court.

March 7, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge
