# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES T. CONWAY III,

        Petitioner,    :    Case No. 3:07-cv-345

- vs -    District Judge Timothy S. Black
    Magistrate Judge Michael R. Merz

MARC C. HOUK, Warden,
 Correctional Institution,

        :

        Respondent.

## DECISION AND ORDER DENYING MOTION TO STAY

This capital habeas corpus case is before the Court on Petitioner's Motion to Hold These Proceedings in Abeyance Pending the Exhaustion of State Court Remedies. (ECF No. 313.) A motion to hold the proceedings in abeyance is a non-dispositive motion on which a Magistrate Judge may render a decision, rather than a recommendation. For the reasons that follow, the Court **DENIES** Petitioner's motion.

    I.    BACKGROUND

Petitioner was convicted and sentenced to death for the September 2001 aggravated murder of Andrew Dotson. *State v. Conway*, 109 Ohio St.3d 412 (2006). Following direct appeal and state postconviction proceedings, Petitioner initiated the instant habeas action on August 1, 2007, by filing a notice of intent to file a habeas petition, as well as motions to proceed in forma pauperis and for the appointment of counsel. (ECF Nos. 1-4.) Petitioner filed his initial habeas petition on June 1, 2008, raising nineteen claims for relief. (ECF No. 15.) On February 19, 2013, and with leave of Court, Petitioner filed an Amended Petition. (ECF No. 180.)

1

In the early stages of this habeas action, the Court permitted considerable factual development. Petitioner filed with this Court the transcripts of the depositions and other documents obtained as part of the discovery process. (ECF Nos. 56-61, 65-81.) Petitioner also conducted discovery in his other capital habeas case. *See Conway v. Houk*, Case No. 3:07cv345 (S.D. Ohio). On April 29, 2011, Petitioner filed a motion to hold these proceedings in abeyance so he could return to state court to file a new postconviction action in order to exhaust claims and evidence developed during federal habeas discovery. (ECF No. 121.) These claims pertained to Attorney Christopher Cicero's conflict of interest and the State's alleged suppression of *Brady* material. With respect to the *Brady* claim, Petitioner alleged the discovery he obtained in habeas corpus established the prosecution suppressed evidence with respect to 1) the non-fatal shooting of Jesse James and James's initial identification of the shooter, 2) Attorney Cicero's cooperation with investigators, and 3) Ronald Trent's failure to provide accurate information in another murder case. (*Id.*, at PAGEID # 3198-3200.) On September 6, 2011, the Court issued a Decision and Order granting Petitioner's motion and holding the proceedings in abeyance (ECF No. 133.)

In November 2011, Petitioner filed his second postconviction petition with the state trial court, pleading five claims for relief. (ECF No. 231-1, at PAGEID # 15708.) Specifically, Petitioner alleged the State suppressed exculpatory *Brady* material, his initial attorney (Cicero) suffered a conflict of interest, trial counsel were ineffective during both the penalty and mitigation phases, and cumulative error resulted in the denial of his constitutional rights. (*Id.* at PAGEID # 15729-15740.)

Ohio imposes stringent jurisdictional requirements for pursuing an untimely and/or successive postconviction action, and the state courts in Petitioner's case determined he failed to

satisfy those requirements. (ECF No. 231-3, at PAGEID # 16123, 16330.) On April 10, 2012, the trial court denied the successive postconviction petition without a hearing, finding "[b]ecause R.C. 2953.23 is constitutional and defendant provides no exception to the limitations contained therein, the Court is barred from consideration of the merits." (*Id*. at PAGEID # 16123.) The trial court also noted that "defendant's challenges in this motion are identical to those presented in his first petition and in his direct appeals" and "[h]e does not allege new facts or rights under R.C. 2953.23(A)(1)(a) and (b)." (*Id*. at PAGEID # 16122.)

The Tenth District Court of Appeals affirmed. (ECF No. 231-3, at PAGEID # 16330); *State v. Conway*, No. 12AP-412, 2013-Ohio-3741, 2013 WL 4679318 (Ohio App. 10th Dist. Aug. 29, 2013). The Court of Appeals determined that Petitioner "arguably" satisfied the requirement of R.C. § 2953.23(A)(1)(a) that he was unavoidably prevented from discovering the documents and facts relied upon in the successor petition, because the State did not provide the documents until federal habeas discovery. (ECF No. 231-3, at PAGEID # 16320-16321.) Nevertheless, the court of appeals agreed the trial court lacked subject matter jurisdiction to hear the successor petition, because Petitioner failed to show by clear and convincing evidence that but for constitutional error at trial, no reasonable juror would have found him guilty. (*Id*. at PAGEID # 16330.) With respect to the allegations concerning Attorney Cicero's disclosure of privileged information to law enforcement, the court of appeals noted that Attorney Cicero was removed as counsel at an early stage of the proceedings and Petitioner failed to identify any specific information or evidence that was derived in violation of the attorney-client privilege. (*Id*. at PAGEID # 16325.) As to the alleged *Brady* violation, the court concluded Petitioner failed to establish that but for the *Brady* violation, the outcome of his trial would have been different. (*Id*. at PAGEID # 16325-16327.) The Ohio Supreme Court declined to accept

3

jurisdiction over Petitioner's appeal. *State v. Conway*, 143 Ohio St.3d 1464 (2015); (ECF No. 231-3, at PAGEID # 16489.)

On March 19, 2013, Petitioner, acting *pro se*, filed a third postconviction petition, raising four claims for relief, as well as a motion for the appointment of counsel. (ECF No. 276-1, at PAGEID # 18963-19028.) The state trial court denied the motion to appoint counsel. Subsequently, this Court authorized federal habeas counsel to expand the scope of their representation to include the state court successor postconviction proceedings. (ECF No. 201.)

On January 4, 2016, and represented by counsel, Petitioner filed an amended successor postconviction petition setting forth nine claims for relief. (ECF No. 276-2, at PAGEID # 20739-20788.) Petitioner challenged the adequacy of Ohio's postconviction review process and asserted several instances of ineffective assistance of trial counsel and initial postconviction counsel. The trial court dismissed the amended petition, finding "*res judicata* bars the majority of Defendant's claims as the claims in the Amended Third Post-conviction Petition are identical or substantially similar to those presented in his first and second post-conviction petitions." (*Id*. at PAGEID # 20891.). Additionally, the trial court concluded:

> Assuming *arguendo* that the Amended Third Post-Conviction Petition satisfies R.C. 2953.23(A)(1)(a) and Defendant was somehow, "unavoidably prevented" from discovering the facts upon which his amended third petition relies, this Court finds the petition nevertheless fails because it is barred by res judicata, and Defendant has failed to prove, by clear and convincing evidence, that any constitutional error deprived him of a fair trial.

(ECF No. 276-2, at PAGEID # 20890.)

On June 6, 2019, the Tenth District Court of Appeals affirmed the decision of the trial court. (ECF No. 276-3, at PAGEID # 21212); *State v. Conway*, No. 17AP-504, 2019 WL 2404897 (June 6, 2019). The court of appeals held that Petitioner failed to clear the

4

jurisdictional bar:

> Conway has not demonstrated he was entitled to have the trial court review his successive petition for post-conviction relief because he did not satisfy both prongs of R.C. 2953.23(A)(1), as required for the trial court to have jurisdiction over his claims.

(ECF No. 276-3, at PAGEID # 21227.)  Specifically, the court noted that much of the information presented was known to Petitioner all along, particularly the evidence relating to his own conversations with informant Ronald Trent.  (ECF No. 276-3, at PAGEID # 21219.) Moreover, the appellate court concluded that "[g]iven the overwhelming evidence of the scheme that the jury considered, the purported inconsistencies that Conway points to do not amount to clear and convincing evidence under R.C. 2953.23(A)(1) that would have cast doubt on the conspiracy to murder Arthurs, much less alter the ultimate result of his trial." (*Id*. at PAGEID # 21220.)  On October 29, 2019, the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeal.  (*Id*. at PAGEID # 21368); *State v. Conway*, 157 Ohio St.3d 1465 (2019).

Upon return to these habeas proceedings, and on April 3, 2020, Petitioner filed a motion for leave to file a second amended habeas petition.  (ECF No. 281.)  In the proposed second amended petition, Petitioner included portions of the claims for relief contained in the two successive postconviction petitions as part of his proposed second, tenth, and eleventh claims for relief.  (ECF No. 282.)  The undersigned denied the motion to amend because the proposed amended petition also included two additional claims asserting cumulative error and a constitutional challenge to Ohio's lethal injection method of execution (claims seventeen and eighteen), both of which are not cognizable in habeas corpus.  (ECF No. 292.)  Objections to the Decision and Order denying leave to amend, as well as to the undersigned's subsequent Supplemental Memorandum on the Motion to Amend, (ECF No. 304), remain pending.  (ECF

5

Nos. 297, 301, 308.) In the Supplemental Memorandum, the undersigned clarified that Petitioner should be permitted to amend or refine his statement of his other claims for relief and directed Petitioner to re-submit his proposed amended petition once the objections are resolved. (ECF No. 304, at PAGEID # 21625.)

## II. MOTION TO STAY

Citing the Ohio Supreme Court's recent decision in *State v. Bethel*, 167 Ohio St.3d 362 (2022), Petitioner now moves to stay and hold the proceedings in abeyance once again, so he may return to the state courts for a third time in order to pursue the same *Brady* and conflict of interest/ineffective assistance of counsel claims the state courts previously dismissed. (ECF No. 313.) Petitioner also moves the Court to authorize his federal habeas counsel to represent him during his anticipated state court proceedings. The Warden opposes Petitioner's motion. (ECF No. 314.) Petitioner has filed a Reply. (ECF No. 315.)

Petitioner contends the Ohio Supreme Court's decision in *Bethel* expands the scope of the successive postconviction remedies that Petitioner previously pursued, and opens the possibility of pursuing a motion for a new trial, thus rendering portions of his second, tenth, and eleventh claims for relief unexhausted. (ECF No. 313, at PAGEID # 21664.) Specifically, Petitioner argues that *Bethel* lowered the standard of proof for satisfying Ohio's successor postconviction jurisdictional prerequisites set forth in Ohio Rev. Code § 2953.23(A)(1), and also removed a time limitation for seeking a new trial based on newly discovered evidence pursuant to Ohio Crim. R. 33.

Respondent opposes Petitioner's motion to stay, arguing that Petitioner has already exhausted the new claims set forth in his Amended Petition and there are no additional state

court remedies available to Petitioner. (ECF No. 314, at PAGEID # 21670.)

The Court's analysis of this issue must necessarily begin with a discussion of the Ohio Supreme Court's *Bethel* decision.

### A. *State v. Bethel*

In *State v. Bethel*, 167 Ohio St.3d 362 (2022), and more recently, *State v. McNeal*, 169 Ohio St.3d 47 (2022), and *State v. Hatton*, 169 Ohio St.3d 446 (2022), the Ohio Supreme Court considered when a trial court has subject matter jurisdiction to consider a post-trial *Brady* claim set forth in either a successive postconviction petition or a Criminal Rule 33 motion for leave to file a motion for a new trial. The issue before the Ohio Supreme Court was whether a timeliness or due diligence requirement could be imposed upon a petitioner after discovering (or after the point when a petitioner should have discovered) the State withheld *Brady* material.

Ohio Revised Code § 2953.23(A)(1) conditions trial court jurisdiction over untimely or successive postconviction petitions on a petitioner's showing that (a) he was "unavoidably prevented from discovery of the facts" underlying his claim, and (b) no reasonable factfinder would have found him guilty or eligible for a death sentence but for the constitutional error at trial. In *Bethel*, the Supreme Court of Ohio held that a petitioner asserting a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), "satisfies the 'unavoidably prevented' requirement contained in Ohio Revised Code § 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." 167 Ohio St.3d at 368. *Bethel* made clear that petitioners are not required to show they could not have discovered suppressed evidence by exercising reasonable diligence, because that "burden" is "inconsistent with *Brady*." *Id*. Quoting *Banks v. Dretke*, 540 U.S. 668, 695 (2004), the *Bethel* court emphasized that criminal defendants "have no duty to 'scavenge for hints of undisclosed *Brady* material.'" *Id.* (quoting

7

*Dretke*, 540 U.S. at 695). The Ohio Supreme Court also interpreted the "no reasonable factfinder" requirement contained in Ohio Revised Code § 2953.23(A)(1)(b) as coterminous with *Brady* materiality, by considering the merits of Bethel's *Brady* claim in its determination of jurisdiction over the successive petition. The Ohio Supreme Court advised that the § 2953.23(A)(1)(b) requirement "goes to the heart of *Brady*'s third prong, which requires Bethel to show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Bethel*, 167 Ohio St.3d at 369-70 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). Bethel, the court concluded, was "not require[d] to show that disclosure of the [] information would have resulted in his acquittal." *Id*.

The Ohio Supreme Court also determined that Criminal Rule 33 does not contain a "reasonable time" filing requirement in connection with motions for leave to file a motion for a new trial when the basis for the motion is newly discovered evidence. The lower courts denied Bethel's motion for leave to file a motion for a new trial because of "unreasonable delay" between the time of discovery of the evidence and the time Bethel filed his motion. The Ohio Supreme Court explained that although Ohio R. Crim. P. 33 requires a petitioner to show that he was "unavoidably prevented from the discovery of the evidence upon which he must rely," the Rule "does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." *Id*. at 375. Ultimately, the Ohio Supreme Court declined to remand the case on this basis, finding that "even assuming arguendo that Bethel would be entitled to a hearing on his motion for a new trial, the hearing would be an exercise in futility, because we have concluded that Bethel's *Brady* claim, which is the basis of his motion, is without merit." *Id*. at 377.

8

### B. Exhaustion and Petitioner's Prior Proceedings

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") requires that state prisoners exhaust available state court remedies on all federal claims before those claims may be reviewed by district courts on habeas review. 28 U.S.C. 2254(b)(1). This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied once the petitioner has fairly presented all of his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *Id*. at 842. Fair presentment requires the petitioner to raise the same factual and legal basis for the claim in state court that he seeks to raise in federal habeas corpus. *Gray v. Neverland,* 518 U.S. 152, 162–63 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Federal district courts may not adjudicate a mixed habeas petition that contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) (finding comity requires that state courts have the first opportunity to review unexhausted claims). District courts have the discretion, however, to stay habeas proceedings and hold them in abeyance to allow a petitioner with a mixed petition to return to state court to exhaust his unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 275–76 (2005). A stay is appropriate only when the unexhausted claims are not plainly meritless, and the petitioner has shown good cause for his failure to exhaust the claims earlier. *Id.* at 277. Stay-and-abeyance is only available in limited circumstances at the discretion of the district court and must be conditioned on time limits so as not to undermine the AEDPA's objectives of streamlining habeas proceedings and encouraging

9

finality. *Id.* at 276–78. Thus, a stay is inappropriate "if a petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 278.

### C. The Instant Motion

On the day Petitioner filed his Reply in support of his motion to hold the proceedings in abeyance, two important decisions were issued in this District considering and rejecting the arguments Petitioner raises herein. *See Were v. Bobby*, 2023 U.S. Dist. LEXIS 44146, 2023 WL 2522837 (S.D. Ohio Mar. 15, 2023) (Watson, D.J); *Conway, III v. Warden*, 2023 U.S. Dist. LEXIS 44142, 2023 WL 2527252 (S.D. Ohio Mar. 15, 2023) (Marbley, C.J.) In denying the motion to stay in Petitioner's other death penalty habeas corpus case, Chief Judge Marbley opined:

> The Court rejects Petitioner's argument that *Bethel* expands the scope of remedies available to him and therefore justifies a stay of these proceedings so that he may return to state court in order to litigate not only his *Brady* claim, but his trial counsel ineffectiveness claims, as well as his claims regarding Attorney Cicero's conflict of interest. *Bethel* considered when a trial court has subject matter jurisdiction to entertain a successive postconviction petition in the limited context where the state is alleged to have withheld material evidence from the accused. With respect to untimely Criminal Rule 33 motions for leave to file a motion for a new trial, *Bethel* made clear that a "reasonable time" filing requirement is not contained within that Rule. Perhaps this may present a "more viable" course of action than was previously thought available, but the hypothetical feasibility of filing such a motion does not mandate a stay of federal habeas proceedings when the essential factual and legal basis of Petitioner's claims have already been presented to the state courts. For purposes of exhaustion, it is not necessary for Petitioner to present the same claim for relief in postconviction and a motion for leave to file a motion for a new trial, because "[w]here several alternative State remedies are available to a defendant, exhaustion of one of those alternatives on a particular issue is all that is necessary. Section 2254 does not require repetitious applications to State courts for relief." *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979) (citing *Brown v. Allen*, 344 U.S. 443, 73 (1953)). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (finding that

10

> "[a]lthough [the language of § 2254] could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion" and "we have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions"); *Francisco v. Gathright*, 419 U.S. 59, 62-63 (1974) (holding that when a petitioner has previously exhausted his state remedies, the petitioner is not required to re-exhaust state remedies due to a change in state law); *Roberts v. LaVallee*, 389 U.S. 40, 42 (1967) (finding "Congress had not intended to require repetitious applications to state courts"). In sum, *Bethel* does not render Petitioner's previously exhausted claims unexhausted.

*Conway*, *22-23 (S.D. Ohio Mar. 15, 2023) (Marbley, C.J.) Judge Watson reached the same conclusion in *Were (n.k.a. Mateen)*. Even more recently, Judge Watson reiterated this determination in *Kinley v. Bradshaw*, 2023 WL 6057368, *4 (S.D. Oh. Sept, 18, 2023), finding *Bethel* did not render Kinley's exhausted claims unexhausted, because a habeas litigant is not "required (or permitted, the Court would add) to repetitively present his federal claims to the state courts once he had done so in one full round of the state's established procedures").

Here, this Court stayed these proceedings to permit Petitioner to return to state court in order to litigate a successive postconviction petition asserting, in part, a *Brady* claim developed during the discovery authorized as part of these habeas corpus proceedings. The state courts determined that Petitioner's claims were either barred by *res judicata* or did not meet the gatekeeping requirements of § 2953.23(A)(1). Because the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeals, the decisions of the Court of Appeals constitute the last reasoned state court decisions addressing Petitioner's successive petitions for postconviction relief. *See Hughbanks v. Hudson*, 2 F.4th 527, 535-36 (6th Cir. 2021) (citing *Barton v. Warden*, 786 F.3d 450, 462 (6th Cir. 2015) (per curiam) (holding that a state court's

11

explicit application of a procedural rule to bar the adjudication of a claim on the merits counts as a "last reasoned opinion").

Importantly, in determining Petitioner failed to satisfy Ohio's jurisdictional prerequisites for consideration of a successor postconviction petition, the state courts assumed, at least in connection with his *Brady* and conflict of interest claims, that Petitioner satisfied the "unavoidably prevented" hurdle of the § 2953.23(A)(1)(a) inquiry. Thus, the main issue in *Bethel* – *i.e.* whether a timeliness or due diligence requirement could be imposed upon a petitioner in connection with the discovery of *Brady* material – was not at issue during Petitioner's first attempt at filing a successive postconviction petition. The state appellate court's decision regarding jurisdiction rested on Petitioner's inability to demonstrate a potentially meritorious *Brady* claim, in order to satisfy the "no reasonable factfinder" requirement of § 2953.23(A)(1)(b).

Petitioner argues that *Bethel* lowered the "no reasonable factfinder" requirement of § 2953.23(A)(1)(b) by replacing that onerous standard with what he considers a less demanding standard used to determine *Brady* materiality – *i.e.* that "a post-conviction petitioner could meet the second prong of O.R.C. § 2953.23(A)(1)(b) by demonstrating that a reasonable probability exists that the outcome of the proceedings would be different as opposed to having to demonstrate that no reasonable juror would have found the defendant guilty or eligible for the death penalty." (ECF No. 313, at PAGEID # 21657.) In support of this argument, Petitioner cites to another recent decision from the Southern District of Ohio noting that "[a]lthough less clear, it also appears that the [*Bethel*] court interpreted the 'no reasonable factfinder' requirement as coterminous with *Brady* materiality." *Pickens v. Shoop*, 2022 WL 2802411 *2 (S.D. Ohio July 18, 2022) (Sargus, D.J).

The Court finds Petitioner's arguments in favor of a stay unpersuasive. Both the factual and legal basis of the *Brady*, conflict of interest, and ineffective assistance of trial counsel claims asserted in the proposed Second Amended Petition were presented to the state courts in the successive state postconviction petitions. The Court is not persuaded that Petitioner's claims have been rendered unexhausted, and the Court disagrees that abeyance is warranted. Although it is possible the state courts could reconsider Petitioner's substantive allegations in a renewed successive petition or motion for a new trial, additional exhaustion is not required here and does not justify a further delay and stay of these proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (noting the Supreme Court has "not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions"). And nothing in this Court's Order denying a stay prevents Petitioner from pursuing additional relief while these proceedings are underway.

With respect to Petitioner's argument that *Bethel* lowers the standard for jurisdiction under the second prong of § 2953.23(A)(1), the court of appeals, in connection with his first successive postconviction action, characterized the relevant inquiry as follows:

> {¶ 27} Pursuant to R.C. 2953.23(A)(2), appellant must provide clear and convincing proof that, but for the constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offenses for which he was convicted. Thus, the issues with respect to his second petition are whether the new facts support a *Brady* violation and, if so, whether the petition establishes by clear and convincing evidence that, but for the *Brady* violation, the outcome of the trial would have been different.

(ECF No. 231-3, at PAGEID # 16323); *State v. Conway*, No. 12AP-412, 2013 WL 4679318, *6 (Aug. 29, 2013). The court of appeals first considered whether there was a *Brady* violation. With respect to Petitioner's argument that the state withheld impeachment evidence regarding witness Ronald Trent's history of being dishonest as an informant, the court of appeals noted

13

Petitioner's evidence showed only that Trent provided information to the Columbus Police Department "on one other occasion, ten years before the Dotson murder." (ECF No. 231-3, at PAGEID # 16324-16325.) The document revealed nothing about *why* the subject of that investigation was not prosecuted. (*Id*.) The court also noted the statements Petitioner made to Trent were tape-recorded and played for the jury. Therefore, "appellant's own recorded statements corroborated Trent's testimony." (*Id*. at PAGEID # 16325.) Regarding the State's suppression of evidence regarding Attorney Cicero's alleged involvement in the plot to kill Dotson, the court of appeals determined the evidence was not exculpatory. Specifically, the court noted "our review of the transcripts reveals no facts which would serve to exculpate appellant from the offenses for which he was convicted." (*Id*.) Finally, Petitioner argued the State withheld impeachment material concerning his involvement as the "trigger man" in the shooting of Jesse James, which was the alleged motive for the murder of Dotson. The court of appeals characterized Petitioner's evidence as ambiguous with limited probative value when offered for impeachment. (*Id*. at PAGEID # 16327.) The court of appeals concluded its inquiry by stating: "In the final analysis, there was no *Brady* violation associated with the recently discovered evidence." (*Id*.) With respect to Attorney Cicero's conflict of interest, the state appellate court concluded that because Cicero was removed at an early stage of the proceedings, any potential conflict "did not manifest itself in deficient performance at trial." (*Id*. at PAGEID # 16322.) Petitioner also failed to identify any specific information that was disclosed to investigators in violation of the attorney-client privilege.

At base, the court of appeals did not find evidence of a constitutional violation as part of its § 2953.23(A)(1) inquiry. Thus, even assuming without deciding that *Bethel* "interpreted the 'no reasonable factfinder' requirement as coterminous with *Brady* materiality," *Pickens v. Shoop*,

*Pickens v. Shoop*, 2022 WL 2802411 *2 (S.D. Ohio July 18, 2022) (Sargus, D.J), the court of appeals did not find materiality upon jurisdictional review of the successive petition.

      For the foregoing reasons, the Court **DENIES** Petitioner's motion to stay (ECF No. 313.) Because the Court has denied Petitioner's motion to stay the proceedings, the Court also **DENIES** the motion requesting authorization for his federal habeas counsel to represent him in state court in connection with the filing of another successive postconviction petition or a motion for leave to file a motion for a new trial.

September 26, 2023.

s/ *Michael R. Merz*<br>
United States Magistrate Judge